UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SCOTT DINGELDEY,

                              Plaintiff,
      v.                                                     **DECISION AND ORDER**
                                                                           15-CV-916-A

VMI HOLLAND B.V.,

                              Defendant.
_____

## I.    INTRODUCTION

Plaintiff Scott Dingeldey originally filed this action against Defendant[1] VMI Holland B.V. on April 1, 2015, in New York State Supreme Court, Erie County. Dkt. 1-1.[2] In it, Plaintiff seeks to recover for personal injuries sustained on August 23, 2014, when his right foot and leg were trapped and crushed in a steel cord cutter machine [hereinafter "the machine" or "the subject machine"] he was operating at the Dunlop Tire Corporation manufacturing facility at which he worked in Tonawanda, New York. The machine, which was used to cut sidewall for semi-truck tires, was designed and manufactured by Defendant. In his complaint, Plaintiff asserted claims against

---

[1] In the Notice of Removal (Dkt. 1) ("Removal Notice"), removing the case to this Court, Defendant explained that it was incorrectly sued as both VMI Holland B.V. and VMI-EPE-Holland B.V., On October 27, 2015, Defendants filed a Corporate Disclosure Statement (Dkt. 2), indicating that Defendant VMI Holland B.V. was formerly known as VMI-EPE-Holland B.V. As Plaintiff does not challenge this assertion, the Court refers only to VMI Holland BV as "Defendant."

[2] Unless otherwise indicated, references herein are to documents filed on the docket in Case 15-CV-916.

Defendant for: (i) strict products liability; (ii) negligence; and (iii) breach of express and implied warranties.

After filing an answer, see, Dkt. 1-3, Defendant, on November 6, 2020, filed a motion for summary judgment. Dkt. 49. Plaintiff opposed such motion, Dkt. 51, [3] and Defendant replied on January 5, 2021. Dkt. 52.

On April 13, 2022, Magistrate Judge Foschio's issued a Report and Recommendation ("R&R") which recommended that Defendant's motion for summary judgment (Dkt. 49) should be denied and that the matter should be scheduled for trial regarding Plaintiff's claims for strict products liability and negligence.[4]

Defendant objects to so much of the R&R as recommended that its motion for summary judgment should be denied with respect to Plaintiff's claims for negligence and strict products. Specifically, Defendant asserts that the R&R "contains several misstatements of fact that reveal a fundamental misapprehension of the cause of injury at issue in this case." Dkt. 56, p.4. While maintaining that post-installation modification of the machine precludes any recovery by Plaintiff for negligence or strict liability, Dkt. 56, pp. 4-6, Defendant also asserts that the R&R is flawed because Magistrate Judge Foschio based his conclusions on: (1) an incorrect mechanism of

---

[3] Plaintiff did not oppose so much of Defendant's motion for summary judgment as sought dismissal of his claims alleging breach of express and implied warranties. See, Dkt. 51, ¶3.

[4] Based upon Plaintiff's lack of opposition to so much of Defendant's summary judgment motion as sought dismissal of his claim for breach of express and implied warranties, Dkt. 51, ¶3, Magistrate Judge Foschio in his R&R determined that Plaintiff's only surviving claims were those for strict products liability and negligence. See, Dkt. 54, pp. 8-9.

2

injury, *see, id.*, pp. 4-6;  (2) incorrect statements regarding the mechanical movements of the machine, *see, id.*, pp. 6-9;  and (3) misstatements of the timing of inquiries by the factory regarding alternate modes of functioning. *Id.*   Finally, Defendant chastises the Magistrate Judge for failing to address Defendant's arguments: (1)  that the affidavit submitted by counsel in response to its summary judgment motion was improper: (2) that Plaintiff's original expert report was not reliable. Id., pp. 9-10.

For the reasons which follow, this Court rejects the Defendant's objections to the R&R and adopts the R&R's recommendation that Defendant's motion (Dkt. 49) for summary judgment dismissing Plaintiff's claims for strict products liability and negligence should be **DENIED**. This Court further determines that so much of Defendant's motion (Dkt. 49) as sought summary judgment dismissing Plaintiff's claim for breach of express and implied warranties should be **GRANTED.**  This Court further directs that this matter be set for trial.

   II.   FACTS

      A. The Machine

The machine on which Plaintiff was injured was designed and manufactured by Defendant in 1988 or 1989 in Epe, Netherlands, and sold by Defendant to Dunlop Tire Corporation in July 1988.  The machine was delivered in approximately July 1989. The machine, which is used to cut sidewall for semi-truck tires, has a number of rollers, with a raised platform between two sets of rollers.  That raised platform is used as a workstation when the machine is being operated in the rewind mode, as it was at the time of Plaintiff's injury.  To an observer standing on the ground facing the machine

and the stairs which lead to its platform[5] there are rollers and control panels which are located both to the right and to the left of the platform.

When the machine is operating in the rewind mode, as it was at the time of the Plaintiff's injury, the employee stands on the platform near a roller (the lower roller) on the left side of the platform which is essentially at the same level at the platform on which the worker would be standing. On the same left-hand side of the platform, several feet above the platform and the lower roller and running parallel to both, is a higher roller. The aforementioned rollers on the left side of the platform (*i.e.*, the lower roller and the higher roller) are in operation when the machine is operating.

When the machine is operating in the rewind mode, the lower roller on the left side of the platform rotates counterclockwise, such that the top of the lower roller is rotating away from the platform. Rubber sheet material[6] is drawn from the right side of the higher roller on the left side of the platform vertically downward to the left side of the lower roller on the left side of the platform. The sheet material and the counterclockwise rotation of the lower roller create an "in-running nip point" at the location where the sheet material contacts the lower roller as sheet material is being drawn around the left side and underside of the lower roller to continue underneath the platform.[7]

---

[5] This same frame of reference will be used to describe the machine throughout this Court's Decision and Order.

[6] At his deposition, Plaintiff referred to these rubber sheets as "FP." Dkt. 49-10, p.6.

[7] This action of the counterclockwise rotating lower roller in conjunction with the rubber sheet material moving around the roller creates what is referred to by both the Plaintiff's

4

It is not disputed that at the time of the accident there was no physical barrier separating the platform from the rotating lower roller and that the lower roller was in close proximity (within inches) from the left side of the platform.[8]

Originally, the machine was equipped with a system which allowed it to operate continuously only in the unwind mode,[9] but not in the rewind mode. To prevent

---

expert and Magistrate Judge Foschio as an in-running nip point hazard. *See*, Dkt. 51-6, pp. 4-5; Dkt. 54, pp. 16-18.  As described in the affidavit of Plaintiff's expert:

> An in-running nip is created by a rotating machine part, such as a sprocket or cylinder, in conjunction with another moving (or static) device or material. In the case of the subject accident the rotating machine part involved in the creation of the in-running nip was the lower roller near the left side·1 or the platform, during the time that it was operating in the rewind mode. In the case of the subject accident the other component (with the roller) which made up the in-running nip was the sheet material which would travel in contact with the lower roller as it traveled past the lower roller during the rewind operation. The location of the in-running nip point involved with the subject accident was at the location where the sheet material first met the lower rotating roller, as the sheet material descended (during the rewind mode) from the upper roller at the left side of the platform during the rewind operation.

Dkt. 51-6, pp. 4-5

[8] The parties' submissions reveal that after the accident a physical barrier, in the form of a yellow metal shield, was installed to provide a barrier between the platform and the lower roller. Dkt. 51-4, pp. 48-49. While the exact distance of any gap between the platform and the roller is unknown, the Court, based upon the photographs provided concludes that the distance is, at most, a matter of inches.  Defendant's representative refused to estimate the distance but characterized the gap as "small, very small."  Dkt. 51-4, p.72. Based on the photographic evidence in the record, in the absence of any physical barrier such as the yellow metal shield that was installed after the accident here, footwear of a worker on the platform could contact the lower roller in the event at such footwear protruded over the "very small" distance of any gap between the platform and the lower roller.

[9] While in the unwind mode, rubber sheet material is generally moving in a vertically upward direction on the left side of the platform from the machine's lower roller to its upper roller, which is basically the opposite direction that such material was moving while it was in rewind mode at the time of the accident.

continuous operation in the rewind mode, the control button for the rewind function as originally designed and manufactured by Defendant utilized a "spring-return switch," *i.e.*, a switch that must be turned to engage the rewind function and that must be manually held in the "on" position such that upon releasing the switch, it springs back to the "off" position. With such "spring return switch" installed, operation of the machine in the rewind position required the machine operator to depress a foot pedal located on the left side of the platform closer to the stairs leading to the platform. Use of the "spring-return switch" while depressing the left foot pedal is, according to Defendant, a safety feature of the machine because it requires the machine operator to remain in contact with the "spring-return switch" and is intended to prevent continuous operation of the machine in rewind mode. According to Defendant, operating the machine in rewind mode using both the "spring-return switch" and left foot pedal necessarily locates the operator away from the nip point hazard created by the lower roller when the machine operates in rewind mode.

At some undisclosed time after the machine was installed at the Dunlop Tire Corporation manufacturing facility, the machine was modified to allow for continuous operation in rewind mode by replacing the "spring-return switch" with a "maintained position switch" which did not require being constantly held by the machine operator in the "on" position but would remain in the "on" position until switched to the "off" position. With the "maintained position switch" installed, the machine could continuously operate in rewind mode, and consequently the machine operator could freely move about the platform while the machine was in operation. The evidence on the record before this Court fails to establish when and who replaced the "spring-

return switch" with the "maintained position switch" that was on the machine at the time of the Plaintiff's injury.

Defendant's representative testified at his deposition that at some point after the purchase and installation of the machine, Dunlop advised Defendant that "concluded they could not rewind in automatic mode and that for further machines to be supplied, they requested [Defendant] to look at it." Dkt. 51-4, pp. 60; 69-70.  In similar machines Defendant subsequently provided to Dunlop, Defendant "added a button to the station for rewinding." *Id.*, p. 60-62. [10]  In addition, a list of spare parts available for purchase that was provided to Dunlop by Defendant at the time of delivery of the subject machine included as available for purchase from Defendant both "spring return switches" as well as "maintained position switches" similar to that which was used to replace the "spring-return switch" on the subject machine (which allowed it to operate in rewind mode continuously). Dkt. 51-4, pp. 77-85.  However, there is presently no evidence in the record before this Court which establishes from where such "maintained position switch" came, when it was installed, or who installed it. There is also no evidence before the Court that during any of the discussions between Defendant and Dunlop—regarding the presence of the "spring return switch" on either the subject machine or similar machines which were subsequently provided to Dunlop by Defendant—that Defendant ever advised Dunlop not to make changes to the switch used for the rewind button.  Dkt. 51-4, pp. 60-61; 71.

---

[10] Such button is presumably the functional equivalent of the "maintained position switch" that was installed on the subject machine at the time of Plaintiff's injury.

7

B.     The Accident

During his deposition, Plaintiff described his accident, which injured his right leg as follows:

> I was rewinding the FP from the top two rollers. It was coming down. And I went to go catch it. And I wasn't -- my leg got caught on the roller underneath the yellow -- as in -- it's not shown in the picture, but before there was a roller there that I stepped on. My leg got caught on to it while it was spinning and it sucked into the machine against the FP.

Dkt. 49-10, p. 6.[11]

Plaintiff's expert, in his report, described the movement of the FP on the machine as follows at the time of the accident. "When the machine is operating in the rewind mode as it was at the time of the accident, the lower roller on the left side of the platform rotates counterclockwise. Sheet material [FP] is drawn from the right side of the higher roller on the left side of the platform to the left side of the lower roller on the left side of the platform. The sheet material and the counterclockwise rotation of the lower roller create an "in-running nip" at the location where the sheet material contacts the lower roller as sheet material is being drawn around the left side and underside of the lower roller to continue underneath the platform. This action of the counterclockwise rotating roller in conjunction with the sheet material moving around the roller created the in-running nip that caused the subject accident. This is an integral aspect of the

---

[11] The photograph Plaintiff was shown during his deposition included a yellow metal physical barrier installed between the lower roller and the platform of the subject machine after the accident.

rewind operation of the accident machine." Dkt. 51-6, pp. 64-65.  Plaintiff's expert further observed:

> The term "in running nip" is usually accompanied with the word "point", to form the expression "in-running nip point." However, in the situation at the accident site with the in-running nip between the roller and the sheet material on the roller, there was a continuous line of adjoining in-running nip points, where a person or clothing could be caught. For this reason, in this report the hazard at the point of operation will generally be referred to as an "in-running nip" instead of as an "in-running nip point". In general, a long line of adjoining in-running nip points is a significantly greater hazard than a single nip point, or very narrow line of nip points. The conditions of the subject accident created an in running nip that could be as wide as the full longitudinal width of the roller.

*Id.*, p. 65.

### III.    DISCUSSION

#### A. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). In assessing a motion for summary judgment, the court is obligated to "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (citation omitted).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine

factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 252 (1986). The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id*. The court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (citing *Anderson*, 477 U.S. at 248, and *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)).

### B. Products Liability and Negligence Law in New York

In a federal action such as this based on diversity jurisdiction, the law of the State of New York applies to all substantive issues. *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 81 (S.D.N.Y. 2001). Under New York Law, a plaintiff injured by an allegedly defective product can bring a claim against the product's manufacturer under one or more of four theories of liability: the theory of strict products liability, the ground of negligence, and an action in contract for breach of express or implied warranty. *See Victorson v. Bock Laundry Mach. Co.*, 37 N.Y.2d 395, 400 (1975).

"In New York, there are three distinct claims for strict products liability: (1) a manufacturing defect, which results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm; (2) a warning defect, which occurs when the inadequacy or failure to warn of a reasonably foreseeable risk

accompanying a product causes harm; and (3) a design defect, which results when the product as designed is unreasonably dangerous for its intended use." *McCarthy v. Olin Corp.*, 119 F.3d 148, 154-55 (2d Cir. 1997) (citations omitted).

Also, "[u]nder New York law, ... a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 177 (2d Cir. 2013) (quoting *Alfaro v. Wal-Mart Stores*, Inc., 210 F.3d 111, 114 (2d Cir. 2000)).

Notably, "'New York courts generally consider strict products liability and negligence claims to be functionally synonymous.'" *Kane v. Covidien LP*, No. 2:23-CV-9207 (NJC) (ARL), 2025 WL 486658, at *6 (E.D.N.Y. Feb. 12, 2025)(quoting *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 406 (S.D.N.Y. 2013)). Under any action for recovery in a products liability case, the plaintiff must prove that the injury complained of was proximately caused by a defect in the product's design, manufacturing, or warnings. *See Fahey v. A.O. Smith Corp.*, 77 A.D.3d 612, 615 (2nd Dep't 2010). In other words, Plaintiff must prove the alleged defect in the product is a substantial cause of the incident causing their injury. *See Caccese v. Liebherr Container Cranes, Ltd.*, 149 A.D. 3d 688, 689 (2nd Dep't 2017). A plaintiff may only recover in such an instance when, at the time of the occurrence of their injury, the product was being "used for the purpose and in the manner normally intended or in a manner reasonably foreseeable." *Amatulli v. Delhi Constr. Corp.*, 77 N.Y.2d 525, 532 (1991).

### C. Analysis

In its objections, Defendant initially maintains that post-installation modification of the spring-return switch—which had been removed and replaced by a maintained position switch which allowed the machine to operate in rewind mode automatically—precludes recovery by Plaintiff under both his negligence and strict liability theories. Dkt. 56, pp.2-4. This Court disagrees and adopts Magistrate Judge Foschio's analysis in that regard.

Under New York Law, "a manufacturer of a product may not be cast in damages, either on a strict products liability or negligence cause of action, where, after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of plaintiff's injuries." *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 475 (1980). However, as this Court has previously stated, "New York law provides that even if a defective design claim is barred by a plaintiff's substantial modification, a plaintiff may nevertheless maintain a claim for strict products liability based on a failure to warn of the consequences of such modification that rendered the product defective or otherwise unsafe." *Pullano v. Chrysler Corp.*, No. 05-CV-0135A(F), 2009 WL 10692145, at *13 (W.D.N.Y. Apr. 23, 2009)), *adopted*, No. 05-CV-0135A(F), 2011 WL 13244291 (W.D.N.Y. July 19, 2011). Moreover, "New York courts have ... [held] that where a safety feature is designed to be removable, a jury question can exist as to whether the product was defectively designed." *Guard Ins. Grp., Inc. v. Techtronic Indus. Co.*, 80 F. Supp. 3d 497, 500–01 (W.D.N.Y. 2015); *see also Beltran*

*v. Techtronic Indus. N. Am., Inc.*, No. 13-CV-5256, 2015 WL 3651099, at *3 (E.D.N.Y. June 11, 2015) ("[T]he New York Court of Appeals has qualified [the subsequent modification] defense in situations where a product was purposefully manufactured to permit use without a safety feature." (quotation omitted)).

Here, this Court agrees with Magistrate Judge Foschio's conclusion "that a reasonable juror could conclude that Dunlop's[12] alteration to the machine by replacing the "spring-return switch" with the "maintained position switch" was foreseeable, such that Defendant should have warned Dunlop against such modification and further underscoring the need for Defendant to equip the machine with the guard which was likely to prevent the accident and Plaintiff's injuries."  Dkt. 54, p. 18.  The New York Court of Appeals has described the standard for evaluating failure to warn claims as "intensely fact-specific, including but not limited to such issues as feasibility and difficulty of issuing warnings in the circumstances; obviousness of the risk from actual use of the product; knowledge of the particular product user; and proximate cause." *Liriano v. Hobart Corp. ("Liriano I")*, 92 N.Y.2d 232, 243 (1998) (internal citation omitted). Given this fact-intensive inquiry, as the Second Circuit has emphasized, "[t]he adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary

---

[12] This Court determines that neither party has established who changed the switch or at what point prior to Plaintiff's accident it was switched.  For the reasons which follow, however, even if this Court were to presume for purposes of this motion that Defendant established that it was Dunlop—or anyone else other than Defendant—that replaced the switch, Defendant has still not established its entitlement to a grant of summary judgment.

judgment." *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 366 (2d Cir. 1997) (citations omitted); *see Liriano v. Hobart Corp. ("Liriano II")*, 132 F.3d 124, 131 (2d Cir. 1998) (stating that courts have "squarely h[e]ld that it is up to the jury to decide whether the manufacturer, in fact, has a duty to warn.") (citations omitted); *Johnson v. Johnson Chem. Co., Inc.*, !83 A.D.2d 64, 69 (2nd Dep't 1992) ("Whether a particular way of misusing a product is reasonably foreseeable, and whether the warnings which accompany a product are adequate to deter such potential misuse, are ordinarily questions for the jury.") (citations omitted); *Cooley v. Carter–Wallace Inc.*, 102 A.D. 2d 642, 642 (4th Dep't 1984) ("The adequacy of the warning in a products liability case based on a failure to warn is, in all but the most unusual circumstances, a question of fact to be determined at trial."). This Court agrees with the Magistrate Judge that such an issue of fact exists in this case with respect to the Plaintiff's failure to warn theory.

Additionally, "[w]here, as here, a plaintiff's expert 'opines that a particular product is defective or dangerous, describes why it is dangerous, explains how it can be made safer, and concludes that it is feasible to do so, it is usually for the jury to make the required risk-utility analysis.'" *Mancuso v. Reebok Intl., Ltd.*, 207 A.D.3d 1240, 1241 (4th Dept 2022) (citing *Terwilliger v. Max Co., Ltd.*, 137 A.D.3d 1699, 1702 (4th Dept 2016); *Estate of Smalley v. Harley-Davidson Motor Co. Group LLC*, 170 A.D.3d 1549, 1552 (4th Dept 2019)).

While Defendant cites alleged infirmities in the analysis regarding the facts and the mechanism of the injury cited by Plaintiffs' expert, this Court agrees with Magistrate Judge Foschio's conclusion that there are conflicting opinions between

parties' experts (Dkt. 54, pp. 16-17), and those conflicts "'may not be resolved on a motion for summary judgment." *Pittman v. Rickard*, 295 A.D.2d 1003, 1004 (4th Dept 2002). Given the "competing expert opinions ... [there is] a triable issue of fact regarding whether a design defect exists." *Palmatier v. Mr. Heater Corp.*, 159 A.D.3d 1084, 1086 (3rd Dep't 2018)(citations omitted); see also *Barclay v. Techno-Design, Inc.*, 129 A.D.3d 1177, 1180 (3rd Dep't 2015)(material issues of fact precluded summary judgment where "plaintiff submitted an affidavit by [expert which] explained that because the side door [of ravioli making machine] does not prevent…access to the parts of the machine, the designer should have anticipated that a person might reach into the machine as it was running. Further, even if installing an interlocking switch was not feasible, [the expert] opined that it was feasible to design the side access with a mesh or screen overlay, covered with see-through plexiglass or an interlocked plexiglass door (like the other access areas) to prevent access to moving parts.").

Even if this Court were to determine, as Defendant contends, that the subsequent modification of the switch was made by someone other than Defendant— "so long as [D]efendant's negligence and unsafe design can be shown to be a substantial cause of the events which produced the injury, the existence of another proximate cause of the accident in addition to defendant's defective design does not excuse defendant from liability." *Fisher v. Multiquip, Inc.*, 96 A.D.3d 1190, 1195 (3rd Dept 2012) (internal quotation marks and citations omitted); see also *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 110 (1983). Thus, "the proximate cause issue is one

for [a] jury and summary judgment at this point is inappropriate." *Craft v. Mid Is. Dept. Stores, Inc.*, 112 A.D.2d 969, 971 (2nd Dep't 1985).

Moreover, "cases applying New York law have noted that design defect claims can survive—even where the removal of the safety guard permitted users' bodies to come into contact with the machinery—when the plaintiff argues that the machinery failed to incorporate other safety features that would have reduced the likelihood of injury." *Beltran v. Techtronic Indus. N. Am., Inc.*, No. 13 CV 5256 RJD RER, 2015 WL 3651099, at *6 (E.D.N.Y. June 11, 2015)(citing cases). In *Beltran*, plaintiff sued a saw manufacturer for the defective design of a table saw, bringing claims under strict products liability and negligence. Plaintiff was injured when his hand made contact with the table saw's blade. Defendants moved for summary judgment on the grounds that the plaintiff's use of the table saw without a blade guard constituted a substantial modification. In denying defendant's motion for summary judgment, the Court observed that plaintiff's expert, "admitted that [plaintiff]'s injury 'probably would not have happened,' if the blade guard had been in place" [and] that the [machine] complied with regulatory requirements at the time of its manufacture." Nevertheless, plaintiff's expert also "stated that the [saw] was unreasonably dangerous (and therefore defectively designed) because it failed to incorporate certain additional safety features…". *Beltran*, 2015 WL 3651099, at *6 . As the Court observed, "drawing all reasonable inferences in favor of plaintiff, the Court finds that he has provided sufficient evidence that, if proven, would permit a reasonable juror to

conclude that Defendants' failure to include these additional safety features in the [machine] was also a proximate cause of [plaintiff]'s injuries." *Id*.

The same reasoning applies here. Assuming *arguendo* that it was not the Defendant who modified the switch and that the machine, at the time of its manufacture, was compliant with all applicable regulations, there still remains an issue of fact as to whether the Defendant's failure to include additional safety features, such as a physical barrier or guard—like that added after the accident—which would have prevented this sort of accident from occurring, was also a proximate cause.

While Defendant also takes issue with a couple of the opinions offered by Plaintiff's expert, this Court notes that simply because experts may disagree does not render their opinion unreliable. "[A]lthough an expert's opinion cannot be devoid of factual support, the opinion is not unreliable simply because another expert's opinion better accounts for the factual record or because experts disagree on the proper interpretation of the record." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2025 WL 354671, at *9 (S.D.N.Y. Jan. 30, 2025). Moreover, "[u]nless the information or assumptions that plaintiff's experts relied on were so unrealistic and contradictory as to suggest bad faith, inaccuracies in the underlying assumptions or facts do not generally render an expert's testimony inadmissible. If plaintiff provided its experts with a piece of false information or withheld relevant data, defendants can cross-examine the experts on this matter, calling into question the weight that the jury should accord their testimony." *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 269 (S.D.N.Y. 2010)(citations and quotations omitted);

17

*see also*, *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 267 (W.D.N.Y. 2013) ("[a]n expert opinion is not per se unreliable because it relies upon some unverified or inaccurate information provided by the expert's client…. Of course, effective cross-examination is dependent upon access to the underlying data and assumptions upon which the expert relied."). Here, each party will have the opportunity to cross-examine their opponent's expert at trial.

Finally, although Defendant makes much of the fact that Magistrate Judge apparently erred in describing the direction of rotation of the lower roller while being operated in rewind,[13] such misdescription is immaterial to the issue of whether Defendant has established its entitlement to summary judgment. The uncontroverted evidence demonstrates that Plaintiff's injuries were sustained when his right foot came into contact with the lower roller that was rotating in a counterclockwise direction immediately adjacent to the platform. That the operative nip point which injured Plaintiff was—based upon the direction of rotation of the lower roller—between the roller itself and the rubber material rather that the roller and the platform (as mischaracterized by the Magistrate Judge) does not negate the impact of the reliability of Plaintiff's expert opinion, since such expert, in his affidavit, correctly described not

---

[13] Magistrate Judge Foschio erroneously indicated in his R&R that in rewind mode the lower roller would be rotating in a clockwise direction such that the nip point was created between such roller and the platform on which Plaintiff was standing. Dkt. 54, pp. 16-17. In fact, as undisputed by the parties, in rewind mode the lower roller would be rotating in a counterclockwise direction such that the nip point which actually injured Plaintiff was not that between the lower roller and the platform, but the nip point between such roller itself and the rubber material which was being fed to the left side of the lower roller before traveling beneath such roller to the other side of the platform.

only the direction of rotation of the lower roller but the operative nip point as well. Dkt. 51-6, pp. 4-5. The fact that nip points may have existed on <u>both</u> sides of the lower roller (depending on which way it was rotating) and that the Magistrate Judge simply cited the incorrect nip point does nothing to advance Defendant's claim for summary judgment—especially where, as here, both parties' experts agree about the mechanism by which Plaintiff's injuries occurred.

The Court has carefully considered any remaining arguments advanced by the parties in this case and finds that they are either without merit or warrant no further discussion.

## **CONCLUSION**

For the reasons stated above, it is hereby **ORDERED** that the Magistrate Judge's Report and Recommendation is **ADOPTED**. Defendant's motion for summary judgment seeking dismissal of Plaintiff's claims for strict products liability and negligence should be **DENIED**. Defendant's motion for summary judgment seeking dismissal of Plaintiff's claim for breach of express and implied warranties should be **GRANTED**. This Court further directs that this matter be set for trial, and the parties are directed to appear before the Court on **May 8, 2025,** at **9:00 AM** to set a date for trial.

**IT IS SO ORDERED.**

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  March 18, 2025
         Buffalo, New York